COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Beales and Senior Judge Frank
Argued at Richmond, Virginia

KAL ROBERT MOLINET

                                                          OPINION BY
v.      Record No. 0279-15-2           JUDGE RANDOLPH A. BEALES
                                                          DECEMBER 8, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Dorian L. Dalton, Senior Assistant Public Defender, for appellant.

Steven A. Witmer, Senior Assistant Attorney General (Mark R. Herring, Attorney General, on brief), for appellee.

Kal Robert Molinet (appellant) was convicted in a jury trial of one misdemeanor count of obstruction of justice in violation of Code § 18.2-460(A).[1]  Appellant argues on appeal that the "Commonwealth failed to prove Molinet obstructed Abernathy in the performance of his duties because Molinet merely failed to fully cooperate and rendered the officer's task more difficult."  For the following reasons, we affirm the trial court.

I. BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth, as we must since it was the prevailing party" in the trial court.  Beasley v. Commonwealth, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)).  So viewed, the evidence at trial was that Sergeant Joel

_____

[1] Appellant was also charged with public intoxication in violation of Code § 18.2-388. The jury found appellant not guilty of that charge.

Abernathy of the Virginia Commonwealth University (VCU) Police Department responded to a call for a backup officer near the intersection of Grace and Harrison Streets in the early morning hours of June 8, 2014. The call was to assist Officer Krista Barton, who was investigating a report of a fight near the 400 block of North Harrison Street. Upon his arrival, Sergeant Abernathy saw Officer Barton speaking with three women at that location. Sergeant Abernathy's duty was to provide assistance to Officer Barton by maintaining a "sphere of control" to "keep the scene safe." In the performance of that duty, Sergeant Abernathy stood nearby to direct bystanders to walk around the incident to allow Officer Barton to conduct her investigation.

While Sergeant Abernathy was observing and controlling the scene, appellant approached the officer from behind, coming from the direction of the intersection of Grace and Harrison Streets. As appellant approached, he "walked up in the middle of what [the officers] were doing" and began speaking to the women who were the subjects of Officer Barton's investigation. After verifying with Officer Barton that appellant was not part of the incident with the three women, Sergeant Abernathy instructed appellant to step away from the scene. Appellant initially refused to comply. When Sergeant Abernathy repeated the instruction in a "more firm" tone, appellant took a single step back. Sergeant Abernathy again instructed appellant to step back and directed him to move away to the curb at the corner of Grace and Harrison Streets. Appellant took another single step back, but refused to move all the way back to the curb as instructed. Sergeant Abernathy testified that, after appellant failed to comply, appellant stepped towards him "in an aggressive manner" and appellant's facial expression became "angry and aggressive." At this time, appellant was "puffing his chest out" and making a threatening gesture with his arms. Sergeant Abernathy described appellant's actions at trial, stating, "And I don't mean he put his hands up, I mean like when you step towards someone and

you're like, you know, I'm going to come at you, and that's why I felt that it was an aggressive move." Appellant also told Sergeant Abernathy, "Shut the fuck up!" When Sergeant Abernathy attempted to speak to appellant once more, appellant twice yelled at him, "Fuck you!" At that time, Sergeant Abernathy arrested appellant for obstruction of justice. Sergeant Abernathy testified that appellant's conduct prevented him from performing his required duty of providing backup to Officer Barton and maintaining the overall safety of the scene because appellant's conduct was "attracting [his] attention."

Officer Chad Perrigan of the VCU Police Department also responded as a backup officer to Officer Barton's investigation. Officer Perrigan testified that he observed appellant speaking to Sergeant Abernathy about the women the police were interviewing. Officer Perrigan testified that, during this exchange, Sergeant Abernathy instructed appellant to step away from the investigation. Officer Perrigan testified that appellant refused to step back when Sergeant Abernathy requested him to do so. Officer Perrigan then observed appellant "take an additional two steps forward towards Abernathy" as appellant became "very aggressive." Appellant was shouting and "waving his hands around." Officer Perrigan heard Sergeant Abernathy tell appellant to "stop," but appellant did not. Officer Perrigan then heard appellant yell several times at Sergeant Abernathy, "Shut the fuck up!" At that time, Officer Perrigan observed Sergeant Abernathy place appellant under arrest. Next, Officer Perrigan assisted Sergeant Abernathy in placing handcuffs on appellant. Officer Perrigan testified that appellant's abusive behavior towards the officers continued after his arrest, when he told Officer Perrigan that he was a "piece of shit" who thought he could do anything he wanted because he wears a "costume with a patch on it."

Appellant testified in his own defense, stating his "main goal [was] to make sure that [the three women were] not going to jail or getting arrested and they will be okay or if they needed

- 3 -

help in any way." Appellant admitted that he did not know the women speaking to Officer Barton and that he had no idea what had occurred at the scene prior to his own arrival. Appellant denied lunging at Sergeant Abernathy in a threatening or aggressive manner. Appellant claimed he was arrested when he attempted to record the encounter with his phone. Appellant also denied screaming profanities at the officers prior to his arrest.

## II. ANALYSIS

### A. Standard of Review

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)) (emphasis in original). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

### B. Obstruction of Justice

Appellant was convicted under subsection A of Code § 18.2-460. That section provides in pertinent part as follows:

> If any person without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer . . . , he shall be guilty of a Class 1 misdemeanor.

Code § 18.2-460(A).

> To constitute obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to 'obstruct' ordinarily implies opposition or resistance by direct action and forcible or threatened means. It means to obstruct the officer himself not merely to oppose or impede the process with which the officer is armed.

Jordan v. Commonwealth, 273 Va. 639, 648, 643 S.E.2d 166, 171 (2007) (quoting Jones v. Commonwealth, 141 Va. 471, 478-79, 126 S.E. 74, 77 (1925)). "[O]bstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult." Ruckman v. Commonwealth, 28 Va. App. 428, 429, 505 S.E.2d 388, 389 (1998).

First, we must determine whether appellant's actions did, in fact, prevent a law-enforcement officer from performing his duties. Viewing the evidence in the light most favorable to the Commonwealth, as we must since the Commonwealth prevailed below, the testimony of Sergeant Abernathy and Officer Perrigan provided sufficient evidence for a rational factfinder to conclude that appellant did obstruct Sergeant Abernathy from performing his duties. Sergeant Abernathy testified that appellant failed to comply with numerous requests for appellant to back away to the curb, so that Sergeant Abernathy could maintain a secure perimeter around Officer Barton's investigation. Both Sergeant Abernathy and Officer Perrigan testified that – after appellant had been told multiple times to step back to the curb – appellant instead took one or two steps towards Sergeant Abernathy, shouted at him to "shut the fuck up," and then put his hands up in

- 5 -

an aggressive manner. Sergeant Abernathy described appellant's actions at trial, stating, "And I don't mean he put his hands up, I mean like when you step towards someone and you're like, you know, I'm going to come at you, and that's why I felt that it was an aggressive move." Finally, appellant shouted expletives at Sergeant Abernathy two more times immediately before he and Officer Perrigan placed him under arrest.

In Atkins v. Commonwealth, 54 Va. App. 340, 678 S.E.2d 834 (2009), the Court held that Atkins's mere flight from the officers was insufficient as a matter of law to establish beyond a reasonable doubt that Atkins was guilty of obstruction of justice in violation of Code § 18.2-460. Specifically, the Court stated that "an accused's hiding or seeking 'to escape [an] officer by merely running away [is] not such an obstruction as the law contemplates.'" Id. at 343, 678 S.E.2d at 835 (quoting Ruckman, 28 Va. App. at 430, 505 S.E.2d at 389).

In Ruckman, Virginia State Police Trooper J.R. White responded to the scene of an automobile accident involving a truck in which Ruckman and another man, James Marlin, were riding. Trooper White conducted three interviews of Ruckman after the accident over the course of several months. 28 Va. App. at 430, 505 S.E.2d at 389. In those interviews, Ruckman changed his account of the accident regarding who was driving the truck – initially stating that Mr. Marlin was the driver and then later telling Trooper White that he could not remember who was driving. Id. Trooper White charged Ruckman with obstructing a law enforcement officer in the performance of his duty, based upon the fact that Trooper White claimed he could not complete an accident report to the Division of Motor Vehicles without further information as to who was operating the truck. Id. Ultimately, the Court concluded that the evidence was insufficient to support the conviction because it failed to prove that Ruckman "obstructed" Trooper White's investigation of the accident. Id. The Court concluded that the fact that Ruckman told the trooper that "he could no longer remember who was driving the truck did not oppose or impede the trooper from performing

- 6 -

the investigation." Id. at 430-31, 505 S.E.2d at 389. The Court also noted that Ruckman did not oppose or impede Trooper White's efforts to locate or interview witnesses. Id. at 431, 505 S.E.2d at 389. Finally, the Court stated, "Although Ruckman's apparently conflicting statements may have frustrated Trooper White's investigation, the statements did not oppose, impede, or resist White's efforts to conduct an investigation of the accident." Id. at 431, 505 S.E.2d at 389-90.

Appellant relied on Atkins and Ruckman to argue in his brief that his own actions, "while unappreciated by the officer, and not fully cooperative, [did] not rise to a level to support a criminal finding that he 'obstructed' the officer in the performance of his duty." However, these cases are quite distinguishable from the facts of this case. Unlike the defendants in Atkins and Ruckman, appellant did not simply flee the scene, try to hide from law enforcement, or give contradictory statements as part of an investigation. Viewed in the light most favorable to the Commonwealth, the evidence at trial showed that appellant – after failing to follow the instructions of Sergeant Abernathy multiple times – stepped towards Abernathy in an aggressive, threatening, and angry manner while shouting and cursing. The evidence also established that Sergeant Abernathy's duty that evening was to provide backup to Officer Barton and maintain the overall safety of the scene by attempting to create a safe perimeter within which she could perform her investigation. Sergeant Abernathy testified that appellant's conduct prevented him from performing those official duties, as Abernathy was required to focus on appellant and the threat posed by his actions. Based on this evidence, we conclude that a rational factfinder could have found that appellant's conduct prevented Sergeant Abernathy from performing his duties in violation of Code § 18.2-460(A).

While appellant denied cursing at Sergeant Abernathy prior to his arrest and denied lunging at or moving toward him in a threatening manner, it is clear that the jury rejected this testimony when it found him guilty of obstruction of justice. Accordingly, we find that the

evidence was sufficient for a rational factfinder – the jury in this case – to conclude that appellant obstructed a law-enforcement officer in the performance of his duties without just cause.

Second, we must determine whether appellant acted with an intent to obstruct Sergeant Abernathy. We conclude that, in the light most favorable to the Commonwealth, appellant's own testimony provided sufficient evidence for a rational jury to conclude that he had the intent to prevent Sergeant Abernathy from performing his duties. The evidence showed that appellant walked up to a police investigation and began to speak with the three women being questioned by Officer Barton. Appellant testified that his "main goal [was] to make sure that [those women were] not going to jail or getting arrested." Appellant formulated this goal even though he admitted on the witness stand that he did not know the three women – and had no way of knowing whether or not they had committed criminal acts prior to his arrival at their location. Viewed together, appellant's stated goal and his actions in furtherance of that objective are clear evidence of his intent to obstruct the efforts of law enforcement. For that reason, there was sufficient evidence at trial to allow the jury to find that appellant acted with the intent to obstruct Sergeant Abernathy from performing his duties.

### III. CONCLUSION

In summary, we find that a rational trier of fact could have found that appellant acted with a clear intent to prevent a law-enforcement officer from performing his duties. Accordingly, we affirm appellant's conviction for obstruction of justice in violation of Code § 18.2-460(A).

Affirmed.