COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Decker, AtLee and Senior Judge Frank
Argued at Norfolk, Virginia


SHAWANDA S. THORNE
                                                              OPINION BY
v.        Record No. 0701-15-1                     JUDGE MARLA GRAFF DECKER
                                                              APRIL 19, 2016
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

Leslee A. Nicholas, Assistant Public Defender, for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Shawanda S. Thorne appeals her conviction for obstruction of justice without force, in

violation of Code § 18.2-460(A).  She alleges that the evidence was insufficient to support her

conviction because her refusal to sufficiently roll down the window of her vehicle as instructed by

the police officer in order for him to test the tint did not constitute obstruction of justice.  She

suggests that her refusal to comply was not opposition or resistance by a direct action as required by

the applicable section of the Code.[1]  Contrary to the appellant's contention, this Court holds that the

evidence was sufficient to support her conviction.  Therefore, we affirm the judgment of the trial

court.

---

[1] The appellant suggests that she failed to preserve this issue for appeal but that the
ends-of-justice exception to Rule 5A:18 should apply.  We hold, as the Commonwealth
acknowledged at oral argument, that the challenge to the sufficiency of the evidence was
properly preserved by the appellant's closing argument in her bench trial.  See Commonwealth v.
Herring, 288 Va. 59, 67-68, 758 S.E.2d 225, 229-30 (2014).  Consequently, Rule 5A:18 does not
bar consideration of the merits of her claim.

# I. BACKGROUND[2]

On October 7, 2012, Officer D.Q. Taylor of the City of Chesapeake Police Department initiated a traffic stop of a four-door sedan with dark tinted windows that was being driven by the appellant. Officer Taylor approached the driver's side of the car, and the appellant opened the window about three to four inches in order to provide her identifying information. She "became very upset" and told the officer that he had no reason to stop her. Taylor explained that she needed to roll down the window farther so that he could test the tint to determine if the windows were "within legal standards." He also explained that he needed her to roll the window down farther for "officer safety reasons" so that he could see into the back seat. Taylor believed that passengers were in the back seat but could not be sure because he could not see into the rear portion of the passenger compartment. The appellant "kept yelling that the window tint was legal and Officer Taylor had no reason to stop her." She persisted in her refusal to roll down the window and yelled repeatedly, "I know my rights! You don't know my rights!"

Officer Taylor requested at least five times that the appellant roll her window "f[a]rther down for the testing." He also asked her to get out of the car. She did not comply with any of the requests. Taylor told her that the window needed to be rolled down a minimum of four to six inches in order for him to test the tinting. He further explained that if she did not roll down the window, he would charge her with obstruction of justice. She yelled, "I know my rights! Do what you gotta do!" Once a backup police unit arrived, the appellant finally rolled down the back passenger-side window sufficiently for the tint testing to be performed. This was about nine minutes after Officer Taylor's first request. Taylor tested the tint and determined that it exceeded the legal limit. He issued the appellant a summons for obstruction of justice.

---

[2] The parties stipulated to a statement of facts that was accepted by the trial court and is a part of the record on appeal. See Rule 5A:8(c).

The appellant presented evidence at trial. She testified that at the time of the traffic stop it was cold and rainy. She also said that she had four children in the back seat of the car. According to the appellant, she explained that she did not want to roll the window down farther than necessary to provide her information because of the weather. She also said that she told Taylor that she could not get out of the car because of a leg injury. The appellant acknowledged that the officer told her he would charge her with obstruction of justice and that she was upset. However, she "denied making all of the statements attributed to her by Officer Taylor." She also denied that the reason she would not roll down the window farther was because the children were not properly restrained. The appellant's fiancé, who was the front seat passenger, also testified and corroborated her account. He acknowledged that Officer Taylor told the appellant that she would be issued a summons for obstruction of justice if she did not get out of the car.

After the appellant rested her case, counsel made closing arguments. The appellant argued that "her actions [of] not rolling down the window did not constitute obstruction and that the officer indeed was able to perform his test on the window which resulted in a summons for that charge." The trial court found the appellant guilty of obstruction of justice without force.[3]

## II. ANALYSIS

The appellant contends that the trial court erred by finding the evidence sufficient to convict her of obstruction of justice. According to the appellant, no evidence proved her opposition or resistance to the officer by a direct act as required under the statute. She maintains that her actions or inactions did not keep him from performing his duty and that she merely delayed lowering her window for several minutes due to the weather. Finally, she suggests that her behavior did not rise

---

[3] In a prior appeal, the Supreme Court of Virginia determined that the circuit court's original order deferring imposition of sentence in this matter was not a final appealable order. On remand, the circuit court entered a corrected sentencing order that suspended rather than deferred imposition of sentence. This appeal followed.

to the level of obstruction because she provided the officer with adequate reasons why she would not roll her window down enough for him to test it for improper tinting, the basis for the traffic stop.

We review a challenge to the sufficiency of the evidence under well-settled legal principles. On appeal, we consider the evidence "in the light most favorable to the Commonwealth," granting to it all reasonable inferences that flow from the evidence. Jordan v. Commonwealth, 273 Va. 639, 645, 643 S.E.2d 166, 169 (2007). Examining "the record through this evidentiary prism requires [the Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth.'" Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). To the extent that our sufficiency analysis requires us to interpret a statute, this is a question of law that we review *de novo*. Powell v. Commonwealth, 289 Va. 20, 26, 766 S.E.2d 736, 739 (2015).

Where factual findings are at issue in the context of an appeal, great deference is given to the trier of fact, in this case the trial court. E.g., Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998). Determining the credibility of the witnesses and the weight afforded their testimony are matters left to the fact finder, who has the ability to hear and see them as they testify. Id. In fulfilling these duties, the fact finder may reject an accused's explanation and infer that she is "lying to conceal [her] guilt." Phan v. Commonwealth, 258 Va. 506, 511, 521 S.E.2d 282, 284 (1999). Additionally, the fact finder is responsible for determining "what inferences are to be drawn from proved facts," provided that the inferences reasonably flow from those facts. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567-68 (1976)). "[W]hen 'faced with a record of historical facts that supports conflicting inferences,' [the appellate] court . . . 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Harper v.

Commonwealth, 49 Va. App. 517, 523, 642 S.E.2d 779, 782 (2007) (quoting Jackson v. Virginia, 443 U.S. 307, 326 (1979)). "If the evidence is sufficient to support the conviction, the reviewing court [will not] substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the [fact finder]." Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013).

Finally, the evidence supporting a conviction must "exclude every reasonable hypothesis of innocence" that flows from the evidence. Dowden v. Commonwealth, 260 Va. 459, 468, 536 S.E.2d 437, 441-42 (2000); see Jones v. Commonwealth, 141 Va. 471, 479, 126 S.E. 74, 77 (1925). Under longstanding appellate principles, whether an "alternative hypothesis of innocence is reasonable is a question of fact" that will be reversed on appeal only if plainly wrong. Stevens v. Commonwealth, 38 Va. App. 528, 535, 567 S.E.2d 537, 540 (2002) (quoting Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997)). "Merely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his [or her] innocence has not been excluded. What weight should be given evidence [remains] a matter for the [fact finder] to decide." Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964); see Marable v. Commonwealth, 27 Va. App. 505, 510, 500 S.E.2d 233, 235 (1998). The appellate court asks only whether a reasonable finder of fact could have rejected the defense theories and found the defendant guilty beyond a reasonable doubt. See Hudson, 265 Va. at 513, 578 S.E.2d at 785.

Code § 18.2-460(A) provides: "If any person without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties . . . or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer . . . , he shall be guilty of a Class 1 misdemeanor." Obstruction requires "actual hindrance or obstruction of the officer." Polk v. Commonwealth, 4 Va. App. 590, 594, 358 S.E.2d 770, 772 (1987). It

involves "prevent[ing] the officer from performing his duty, as to 'obstruct' ordinarily implies opposition or resistance by direct action." Id. (quoting Jones, 141 Va. at 478-79, 126 S.E. at 77). The offender must "obstruct the officer himself[,] not merely . . . oppose or impede the process with which the officer is armed." Jones, 141 Va. at 479, 126 S.E. at 77 (quoting 2 Hascal R. Brill, Cyclopedia of Criminal Law § 1156 (1923)), quoted with approval in Jordan, 273 Va. at 648, 643 S.E.2d at 171); see also 2 Brill, supra, §§ 1154-56, at 1780-84 (defining the contours of the common-law offense of obstruction of justice). Consequently, actions that make an officer's discharge of his or her duty simply more difficult, but achievable, do not constitute obstruction of justice without force. See, e.g., Jones, 141 Va. at 477-80, 126 S.E. at 76-77 (ruling that a fleeing suspect did not obstruct justice when he threw an incriminating object into the road in front of a pursuing officer's vehicle because the circumstances did not prove that the object interfered with the pursuit); Atkins v. Commonwealth, 54 Va. App. 340, 344, 678 S.E.2d 834, 836 (2009) (holding that flight from the scene alone does not constitute obstruction); Ruckman v. Commonwealth, 28 Va. App. 428, 430-31, 505 S.E.2d 388, 389-90 (1998) (ruling that the defendant's conflicting statements may have frustrated the trooper's investigation but did not prove that he "opposed or resisted" the trooper's "performance of his duties" and did not constitute obstruction); see also Jordan, 273 Va. at 643-44, 648-49, 643 S.E.2d at 168-69, 171-72 (holding that the defendant's behavior after his arrest did not prove a violation of Code § 18.2-460(C) because it did not involve force and opining in *dicta* that the defendant's behavior may have made the officer's discharge of his duties more difficult but did not "impede or prevent [the officer] from performing his tasks").

Nevertheless, obstruction may be either active or passive. See DiPino v. Davis, 729 A.2d 354, 361-62 (Md. 1999) (recognizing that common-law obstruction includes both "(1) *positive direct obstruction*, in which the officer acts directly against the defendant or [his] property and is physically resisted" and "(2) *passive direct obstruction*, where the officer seeks to make the

defendant act directly and the defendant refuses or fails to act as required"); State v. Mattila, 712 P.2d 832, 833-34 & n.1 (Or. Ct. App. 1986) (under a statute criminalizing obstruction "'by means of intimidation, force, physical or economic interference or obstacle,'" holding that the defendant's refusal to obey a police order to remove a "crutch" being used to "keep[] the door wedged shut," preventing the officers from entering a home, was sufficient to support his conviction (quoting Or. Rev. Stat. § 162.235(1))). As long as the obstructive behavior "clearly indicat[es] an intention on the part of the accused to prevent the officer from performing his duty," the evidence proves the offense.[4] Jordan, 273 Va. at 648, 643 S.E.2d at 171 (quoting Jones, 141 Va. at 478, 126 S.E. at 77).

In determining whether the appellant's behavior during the traffic stop that prevented Officer Taylor from testing the window tint constituted obstruction, we find guidance in the recent decision in Molinet v. Commonwealth, 65 Va. App. 572, 779 S.E.2d 231 (2015). In Molinet, one officer was investigating a reported fight while a second officer was tasked with maintaining a safe perimeter. Id. at 574-75, 779 S.E.2d at 232. The defendant, a bystander, attempted repeatedly to breach the perimeter and ignored the second officer's orders to return to the curb. Id. at 575, 779 S.E.2d at 232. The bystander also stepped toward the officer "in an aggressive, threatening and angry manner while shouting and cursing," and he repeated his curses several times. Id. at 575, 580, 779 S.E.2d at 232-33, 235. On these facts, the Court held that the defendant obstructed justice under subsection (A) because the second officer was "required to focus on [the defendant] and the threat posed by his actions" and was unable to perform his assigned duty of maintaining a safe perimeter. Id. at 580-81, 779 S.E.2d at 235.

---

[4] The appellant's assignment of error does not challenge the sufficiency of the evidence to prove her intent. See Rule 5A:12(c)(1)(i) ("Only assignments of error assigned in the petition for appeal will be noticed by this Court."). She asserts only that "the evidence failed to establish *an act* constituting obstruction." (Emphasis added). Accordingly, we do not address the issue of intent.

In the instant case, like in <u>Molinet</u>, the record makes clear that the appellant did more than merely make the officer's tasks more difficult.[5]  Instead, she prevented his efforts to investigate the suspected window tint violation, as required to prove obstruction under subsection (A).  The officer explained to the appellant why he stopped the car and that he needed her to roll down the window at least four to six inches so that he could test the tint to determine whether it was "within legal standards."  He added that he also needed her to roll the window down farther so he could see who was in the back seat to ensure officer safety.  Despite the officer's repeated orders to roll down the window, the appellant did not comply and, instead, "kept yelling that the window tint was legal and Officer Taylor had no reason to stop her."  She refused to roll down her window and shouted, "I know my rights!"  At least five times during the course of the interaction, the officer made the request that she roll the window down farther so that he could test the tint.  The officer told her that he would charge her with obstruction of justice if she did not comply, and she responded by saying, "I know my rights!  Do what you gotta do!"  It was only after a backup officer arrived, and about nine minutes after the initial request, that the appellant rolled down the window enough for the officer to perform the test.

---

[5] The decision in <u>Jordan v. Commonwealth</u>, 273 Va. 639, 643 S.E.2d 166 (2007), which involved a conviction under subsection (C), does not control the outcome here.  Subsection (C) requires proof of both force and an attempt, which includes the specific intent to obstruct.  <u>See</u> <u>Holley v. Commonwealth</u>, 44 Va. App. 228, 234, 604 S.E.2d 127, 130 (2004) (defining attempt).  Neither is required under subsection (A).  <u>See</u> <u>Marshall v. Commonwealth</u>, 58 Va. App. 210, 217, 708 S.E.2d 253, 256 (2011) (noting that the term "'knowingly' . . . do[es] not encompass specific intent or purpose to accomplish a result").  Jordan engaged in various acts after his arrest, including removing a roll of cash previously seized from him from the police car.  273 Va. at 643, 643 S.E.2d at 168.  Then, during intake and questioning, he resisted handcuffing, walked slowly, and stopped repeatedly, and he refused to answer questions "in a timely fashion."  <u>Id.</u> at 643-44, 643 S.E.2d at 169.  The Supreme Court held that this conduct did not involve the use of force.  <u>Id.</u> at 648-49, 643 S.E.2d at 171-72.  In *dicta*, the Court noted that Jordan's acts merely made the officer's tasks more difficult and "did not impede or prevent [the officer] from performing [those] tasks," as required to prove obstruction.  <u>Id.</u> at 649, 643 S.E.2d at 172; <u>see also</u> <u>id.</u> at 648-49, 643 S.E.2d at 171-72 (not addressing in that *dicta* whether Jordan's taking the cash impeded the officer).

Based on this evidence the trial court properly concluded that the appellant was guilty of obstruction of justice without force. She was told the purpose of the stop, and she was asked at least five times to roll down a window so that the officer could test the tint. Her verbal responses to the officer not only constituted repeated refusals to roll down a window but also reflected her clear understanding that she was keeping him from performing his duty. She would not get out of the car, and when faced with the officer's unequivocal statement that if she continued to refuse the order to roll down the window he would arrest her for obstruction of justice, she ultimately told him, "Do what you gotta do!" This behavior did not merely oppose or impede "the process with which the officer [was] armed." Jordan, 273 Va. at 648, 643 S.E.2d at 171 (quoting Jones, 141 Va. at 479, 126 S.E. at 77). Instead, these facts demonstrate behavior on the part of the appellant that completely prevented the officer from performing his duty. The fact that once a backup officer arrived the appellant complied with the command to roll down a window does not preclude the finding that her actions over a period of nine minutes prior to the second officer's arrival were sufficient to constitute obstruction of justice. See, e.g., Craddock v. Commonwealth, 40 Va. App. 539, 544-46, 552-53, 580 S.E.2d 454, 457-58, 461 (2003) (upholding an obstruction conviction under subsection (C) where officers were eventually able to complete a search of the defendant's person despite his extended struggling that kept them from doing so for three to four minutes and continued throughout the search).

The appellant's version of the facts does nothing to change this conclusion. See, e.g., Tizon v. Commonwealth, 60 Va. App. 1, 12-13, 723 S.E.2d 260, 265 (2012) ("[E]ven if not 'inherently incredible[,'] a defendant's exculpatory version of events need not be accepted by the factfinder." (quoting Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980))). Under the clear wording of Code § 18.2-460(A), the trier of fact determines if the appellant's repeated refusals to obey the officer's commands were "without just cause." The

appellant and her fiancé admitted that the officer warned her that if she did not roll down the window, he would charge her with obstruction of justice. Although she denied the officer's account of the interaction, she did not deny that she refused to roll down the window for a period of time. She simply offered the trier of fact reasons for her decision not to comply.

The competing evidence was before the trial court, which had the opportunity to listen to the testimony, observe the witnesses, consider the arguments of counsel, and determine what happened. The court as trier of fact was entitled to disbelieve the appellant and to conclude, additionally, that her actions that kept the officer from testing the windows until backup arrived constituted obstruction "without just cause." This is not an instance of merely making the officer's job more difficult. The appellant completely prevented Officer Taylor from testing the window tint for a significant period of time. Because of her behavior, he was entirely unable to perform his duties related to the basis for the traffic stop. The trial court's decision that she obstructed justice is not plainly wrong or without evidence to support it.

### III. CONCLUSION

We hold that the evidence was sufficient to prove obstruction of justice without force. Consequently, we affirm the appellant's conviction.

<u>Affirmed.</u>