COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Decker and O'Brien
Argued at Alexandria, Virginia

UNPUBLISHED

ANDREA ROCHELLE FRIPP-HAYES

v.      Record No. 1500-15-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY GRACE O'BRIEN
OCTOBER 4, 2016

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jan L. Brodie, Judge

Lauren Whitley, Senior Assistant Public Defender, for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R. Herring, Attorney General, on brief), for appellee.

Following a jury trial, Andrea Rochelle Fripp-Hayes ("appellant") was convicted of misdemeanor obstruction of justice in violation of Code § 18.2-460. She was acquitted of a second charge, felony assault on a police officer in violation of Code § 18.2-57. The court denied appellant's motion to set aside the verdict and imposed the jury's sentence of a $2500 fine. Appellant asserts that the court erred in finding the evidence sufficient to establish that she obstructed the officer in the performance of his duties.

I. Factual Background

We review the evidence in the light most favorable to the prevailing party, the Commonwealth. Whitehurst v. Commonwealth, 63 Va. App. 132, 133, 754 S.E.2d 910, 910 (2014). The evidence established that on August 12, 2014, Officer Hristo Hristov viewed a video of a man stealing a woman's purse from a sandwich shop in Fairfax County. Two weeks later, Officer

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Hristov saw a young man, K.F.,[1] within a block of the sandwich shop. Officer Hristov testified that K.F. looked "exactly the same" as the person on the video and also was wearing the identical "very colorful fishing hat" worn by the thief. The officer stopped K.F. to question him.

Officer Hristov told K.F. that he was conducting an investigation of a larceny that occurred two weeks earlier, and while K.F. was "not in trouble at this point," the officer requested K.F.'s name, address, and photograph for the investigation. K.F. told Officer Hristov his name and address, but the officer wasn't able to verify the information because K.F. did not have any identification with him. K.F. refused to allow the officer to photograph him without his mother present.

K.F. and Officer Hristov were standing directly in front of a barbershop during their encounter. K.F. gave a barbershop employee, Jeff Wolfolk, his mother's telephone number. Approximately four minutes later, appellant, who is K.F.'s mother, arrived in her vehicle, parked her car, and exited. She told K.F. to get in the car, which he did. Officer Hristov explained to appellant that he was investigating a crime in which her son was a suspect and he needed to identify her son and take his picture. He also told appellant that he needed to see her identification to "make sure [she] actually [was] the mother."

The officer testified that despite the fact that he remained calm and under control, appellant's reaction was "hostile" and "uncooperative." She repeatedly told the officer that he was required to explain her legal rights and she did not have to tell him anything. Officer Hristov stated that he explained to appellant six or seven times what he needed. In response, appellant swore at him, and got back into her vehicle. The officer testified that he told her: "[you] cannot leave. Your son is a suspect in a larceny. I have to obtain information." In response, appellant began to drive her car "pretty quick, pretty fast," and the officer ran alongside of her vehicle and opened the

---

[1] We identify the young man by his initials because he was a juvenile at the time.

driver's side door. Appellant swerved to her left and the driver's side rear tire ran over Officer Hristov's right foot. Appellant stopped "almost right away," and the officer called for backup. Officer John Yang arrived and also tried to explain to appellant why the officers needed her information. Appellant ignored Officer Yang and attempted to drive her vehicle again, but Officer Yang ran in front of her car and blocked it with his body. At that point, two other officers who had arrived blocked appellant's car with their cruisers and she was placed under arrest. Officer Hristov was taken to the hospital where he was treated and released.

At trial, appellant testified and claimed that the officer didn't ask her for her personal information until she had been at the scene for thirty minutes. She denied that she refused to give the information to him. Appellant acknowledged that the officer told her that she was interfering in an investigation and he needed to take her son's picture. She denied swerving to hit Officer Hristov and denied running over his foot. She also disputed Officers Hristov and Yang's testimony that she tried to drive away a second time and that the arriving officers parked their cars in front of and behind her. Appellant acknowledged that she had previously been convicted of a crime of moral turpitude.

In rebuttal, Officer Hristov testified that he asked appellant for her personal information immediately after he encountered her, after she told her son to get into the car. Officer Hristov stated that despite the fact that he asked for her information "over and over again," appellant did not comply with his request and only provided the information when she was arrested.

## II. Analysis

### A. Standard of Review

"When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584

S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). This Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Rather, "the relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010).

Determining the credibility of witnesses and the weight to afford their testimony are matters left to the finder of fact. Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998). "Where factual findings are at issue in the context of an appeal, great deference is given to the trier of fact." Thorne v. Commonwealth, 66 Va. App. 248, 253, 784 S.E.2d 304, 307 (2016). The factfinder may choose not to accept an accused's statement and may determine that she is "lying to conceal [her] guilt." Phan v. Commonwealth, 258 Va. 506, 511, 521 S.E.2d 282, 284 (1999). "If the evidence is sufficient to support the conviction, the reviewing court [will not] substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the [fact finder]." Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013).

B. Sufficiency of the Evidence to Prove Obstruction of Justice

Code § 18.2-460(A) provides:

> If any person without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so . . . he shall be guilty of a Class 1 misdemeanor.

The Supreme Court has explained the crime of obstruction of justice as follows:

> [I]t is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his

> duty, as to "obstruct" ordinarily implies opposition or resistance by direct action . . . . It means to obstruct the officer himself not merely to oppose or impede the process with which the officer is armed.

Jones v. Commonwealth, 141 Va. 471, 478-79, 126 S.E. 74, 77 (1925). Obstruction does not occur when the person's conduct merely frustrates the officer's investigation. Atkins v. Commonwealth, 54 Va. App. 340, 343, 678 S.E.2d 834, 835 (2009). In Molinet v. Commonwealth, 65 Va. App. 572, 578, 581, 779 S.E.2d 231, 234, 235 (2015), we applied a two-step analysis to determine whether the evidence was sufficient to prove obstruction: "[f]irst, we must determine whether appellant's actions did, in fact, prevent a law-enforcement officer from performing his duties. . . . Second, we must determine whether appellant acted with an intent to obstruct [the law-enforcement officer]."

Appellant contends that the evidence was insufficient to convict her of obstruction of justice. She argues that merely refusing to identify herself did not constitute obstruction of justice. She also contends that she took no purposeful action to make contact with the officer because it was the *officer's* actions that caused the contact; he chased after the car and attempted to open her door. Finally, appellant notes that while she made it more difficult for Officer Hristov to take her son's picture, it was not impossible, because Officer Hristov eventually was able to photograph K.F.

At the outset, we note that Officer Hristov's initial detention of K.F. was legally justified, based on the officer's reasonable articulable suspicion that K.F. was involved in criminal activity. Terry v. Ohio, 392 U.S. 1, 30 (1968). "If a person matches the physical description of a criminal suspect, the police have reasonable suspicion to effect a Terry stop of that individual." Brown v. Commonwealth, 33 Va. App. 296, 307, 533 S.E.2d 4, 9 (2000) (citing Jones v. Commonwealth, 230 Va. 14, 18, 334 S.E.2d 536, 539 (1985)). Further, an officer who suspects that criminal activity has occurred has "full authority" to question a suspect about his identity. See Jones, 230 Va. at 19, 334 S.E.2d at 540.

Here, Officer Hristov informed appellant why he was detaining K.F. He testified that his words at the beginning of the encounter were:

> [m]a'am, I'm investigating a crime. Your son is [a] suspect in it. It's a grand larceny. I need to identify him. I need to take a picture of him now because you're on scene and you just ordered somebody to get in your car. I need to identify you and make sure you actually are the mother.

Despite this explanation, appellant became agitated and refused to cooperate with the officer. When she directed K.F. to get into her car and attempted to drive away, her actions prevented the officer from taking K.F.'s picture.

This case is controlled by existing case law. In Thorne v. Commonwealth, 66 Va. App. 248, 784 S.E.2d 304 (2016), a police officer stopped a vehicle that he suspected had illegally tinted windows. Id. at 250-51, 784 S.E.2d at 305-06. He asked the defendant, who was the driver, to roll down her window so he could test it and to allow him to see into the back seat, for officer safety. Id. The defendant refused to roll down the window, despite being asked at least five times. Id. at 251, 784 S.E.2d at 306. She told the officer that he had no reason to stop her, and yelled repeatedly, "I know my rights!" Id. It wasn't until backup officers arrived nine minutes later that the defendant complied with the officer's request and allowed him to check the window tint. Id.

This Court affirmed the obstruction of justice conviction in Thorne because of the defendant's adamant rejection of the officer's request to roll down the window. Id. at 257-58, 784 S.E.2d at 309. The Court found that the defendant's actions "not only constituted repeated refusals to roll down a window but also reflected her clear understanding that she was keeping him from performing his duty." Id. at 258, 784 S.E.2d at 309. The defendant was not merely making the officer's job more difficult. Id. at 259, 784 S.E.2d at 310. "Because of her behavior, he was entirely unable to perform his duties related to the basis for the traffic stop." Id. See also Molinet, 65 Va. App. at 580, 779 S.E.2d at 235 (finding defendant's actions prevented the officer from

performing his duties when defendant approached witnesses being questioned in a police investigation and disregarded the officer's repeated directions to step away. He instead shouted and stepped toward the officer in a "threatening, and angry manner.").

Likewise, in the present case, appellant's actions during her encounter with Officer Hristov completely precluded him from taking a photograph of K.F., which he determined was necessary for his investigation. Officer Hristov repeatedly explained to appellant that he needed a photograph of K.F. because he was investigating the crime of grand larceny. Despite the officer's justification for his request, appellant refused to present any identifying information, refused to allow him to photograph her son, and attempted to drive away with her son in the car, reflecting her intent to prevent the officer from performing his investigation. "Intent is the purpose formed in a person's mind, which may be shown by circumstantial evidence including the person's conduct." Coles v. Commonwealth, 270 Va. 585, 590, 621 S.E.2d 109, 111 (2005). "[T]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." Moody v. Commonwealth, 28 Va. App. 702, 706-07, 508 S.E.2d 354, 356 (1998).

Here, as in the Thorne case, appellant's behavior did more than just make the officer's job more onerous; it completely precluded him from carrying out his investigation. Officer Hristov was prevented from taking K.F.'s picture until appellant was arrested. Furthermore, the evidence established that appellant acted with the intent to obstruct. We find, therefore, that the trial court was not plainly wrong in finding the evidence was sufficient to prove obstruction of justice.

Affirmed.