COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Senior Judge Frank
Argued at Norfolk, Virginia

RAYMOND DORELL WARREN

                                                          MEMORANDUM OPINION* BY
v.        Record No. 0893-17-1                            JUDGE ROSSIE D. ALSTON, JR.
                                                          MAY 29, 2018
COMMONWEALTH OF VIRGINIA


                   FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                               Everett A. Martin, Jr., Judge

            (B. Thomas Reed; Larchmont Law Group, on brief), for appellant.
            Appellant submitting on brief.

            Brittany A. Dunn-Pirio, Assistant Attorney General (Mark R.
            Herring, Attorney General, on brief), for appellee.


        Raymond Dorell Warren (appellant) appeals his obstruction of justice conviction, arguing

that the trial court erred in denying his motion to strike.[1]  Appellant contends the evidence was

insufficient to sustain his conviction.  We disagree.

                                          BACKGROUND

        On August 21, 2016, officers responded to a "person with a weapon" dispatch.  The

offender was described as "a black male wearing a white t-shirt and black jeans."  Officer

Weaver arrived at the scene--an apartment complex.  Officer Weaver observed Toni Smith,

appellant's girlfriend, emerge from the bushes and rush toward her.  Smith was covered in

scratches and appeared disheveled and "cr[ied] hysterically."  Smith stated "I can't believe he

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] In his assignment of error, appellant misstates that the trial court erred in denying his
"motion to dismiss."

did that. I thought he was going to kill me." Officer Williams and Officer Cruz subsequently arrived at the scene. The three officers then observed appellant, a man fitting the description, drop his bike and run by. Officer Williams ran after and eventually caught up with appellant. Appellant swore "[y]ou're f[] lucky" with his hand in his waistband. As Officers Williams and Cruz attempted to confirm that appellant was the offender, appellant continued running toward the apartment building, disregarding commands to "stop." Officer Williams pursued him, and Officer Cruz followed. Officer Cruz heard Officer Williams say "I think he ha[s] a weapon." Officer Cruz then drew his service weapon. As Officer Cruz rounded the corner, appellant ran toward him. Officer Cruz ordered appellant onto the ground. Appellant did not heed Officer Cruz's command but instead retreated into the apartment building through its single entry way. Appellant was the only person in this area. Appellant ran up to the second floor and entered the apartment Sammie McElroy shared with Tonya Ayers. Neither McElroy nor Ayers knew appellant. Appellant told them he "was being chased by the police and . . . couldn't . . . be found with his handgun." Appellant lifted up his shirt, withdrew his firearm, waved it around, and put it down. McElroy and Ayers told appellant to leave the apartment, and he did so. About three to five minutes later, appellant tried to re-enter the apartment but could not do so because the door had been locked.

At this point, appellant opened the door of the apartment building and shouted to the officers "[y]ou all will have to kill me and bring my girlfriend to me." He also yelled that he had hostages, that this was a "standoff," and that he was not coming out. Appellant continued to scream variations of these phrases. Appellant threatened to shoot the officers, and several times gestured as if he were armed. At one point, appellant pulled out his cell phone, brandished it "as if [it were] a gun, trying to get [the officers] to discharge their weapons." Throughout the "standoff," officers repeatedly commanded appellant to "come out with his hands up" and get on

the ground, but appellant refused. Ultimately, appellant was tasered by officers at the scene. Appellant responded "[y]ou[] all have done it now. I'm getting the MAC."[2] Appellant eventually surrendered. At this point, McElroy exited the apartment building and informed the officers that a "black [man] wearing black pants" deposited a firearm in his apartment. Officers Williams and Cruz entered McElroy's apartment and collected the firearm.

After appellant was taken into custody, he asked the officers if they found the firearm. He repeated this in the ambulance. Appellant also indicated that he would show the officers where the firearm was.

At trial, appellant pled not guilty and contested the two charges: possession of a weapon by a violent felon and obstruction of justice. The Commonwealth's witnesses reiterated the events as described. In addition, McElroy admitted on cross-examination that he was convicted of shoplifting over 20 years ago and that he was nearsighted; however, he testified in support of his identification of appellant that on the day in question, he wore corrective lenses and a pair of glasses. In addition, the following facts were disputed: whether appellant placed the firearm on the ottoman or counter and the length of the "standoff." The Commonwealth rested.

Appellant made a motion to strike. The trial court denied the motion, finding the evidence was sufficient to proceed.

Appellant put on his case-in-chief. He testified on his own behalf. Appellant confirmed that Smith was his girlfriend at the time but denied pulling a firearm on her. He stated that the officers lied when they testified. Appellant denied running by the officers, telling the officers "[y]ou're lucky," that this was a hostage situation, and that this was a standoff, and asking whether they found his firearm. Appellant also denied entering McElroy's apartment and alleged that McElroy abused narcotics. Appellant noted that the witnesses' descriptions of him were

_____

[2] "MAC" is a "slang term for a type of [firearm]"—a MAC-10 or MAC-11 firearm.

incorrect. Appellant also explained that he retreated into the apartment building because officers "brutalize" men like him. On cross-examination, appellant admitted he was previously convicted of malicious wounding and use of a firearm in addition to two other felonies.

During closing argument, appellant renewed his motion to strike on the obstruction of justice charge. Appellant contended "refusing to come out, . . . refusing to get on the ground, . . . [and] refusing to submit to arrest" do not amount to obstruction of justice. The trial court found that appellant's "shameless denial of responsibility" was "brazenly mendacious." The trial court convicted appellant of both offenses. The trial court also noted that, with regard to the obstruction of justice conviction, if it had ruled otherwise, the trial court would "have [had] to believe there [wa]s some phantom . . . in this apartment stairwell, [that came] into [McElroy's] apartment and [deposited the] handgun." Appellant was sentenced to twelve months' incarceration on the obstruction of justice conviction and five years' incarceration on the possession of a weapon by a violent felon conviction.

ANALYSIS

Appellant contends that the evidence was insufficient to sustain his conviction.

"On appeal, we consider the evidence 'in the light most favorable to the Commonwealth,' granting to it all reasonable inferences that flow from the evidence." Thorne v. Commonwealth, 66 Va. App. 248, 252-53, 784 S.E.2d 304, 306 (2016) (quoting Jordan v. Commonwealth, 273 Va. 639, 645, 643 S.E.2d 166, 169 (2007)).

> "[A] reviewing court does not 'ask itself whether it believes that
> the evidence at the trial established guilt beyond a reasonable
> doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588
> S.E.2d 384, 387 (2003) [(emphasis omitted)] . . . . "We must
> instead ask whether 'any rational trier of fact could have found the
> essential elements of the crime beyond a reasonable doubt.'" [Id.]
> (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584
> S.E.2d 444, 447 (2003) (*en banc*)) [(emphasis omitted)]. See also
> Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499,
> 502 (2008). "This familiar standard gives full play to the

- 4 -

responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson [v. Virginia], 443 U.S. [307,] 319 [(1979)].

Molinet v. Commonwealth, 65 Va. App. 572, 577, 779 S.E.2d 231, 233 (2015).

"Where factual findings are at issue in the context of an appeal, great deference is given to the trier of fact." Thorne, 66 Va. App. at 253, 784 S.E.2d at 306.

The statute states in pertinent part that

[i]f any person without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer . . . , he shall be guilty of a Class 1 misdemeanor.

Code § 18.2-460(A).[3]

To constitute an obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty.

Ruckman v. Commonwealth, 28 Va. App. 428, 429, 505 S.E.2d 388, 389 (1998) (quoting Jones v. Commonwealth, 141 Va. 471, 478-79, 126 S.E. 74, 77 (1925) (citation omitted)).

We note "[o]bstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult." Id. Obstruction "may be either active or passive." Thorne, 66 Va. App. at 255, 784 S.E.2d at 308 (citing DiPino v. Davis, 729 A.2d 354, 361-62 (Md. 1999) (indicating that "common-law obstruction includes both '(1) positive direct obstruction in which the officer acts directly against

---

[3] When this Court granted in part and denied in part appellant's petition for appeal, we noted in footnote 1 that the Commonwealth relied on Code § 18.2-460(B) in its brief while the warrant alleged a violation of Code § 18.2-460(A). Upon further inspection, during arraignment, the clerk stated appellant was charged with a violation of Code § 18.2-460. At trial and in the trial court's order, the trial court found appellant guilty of violating Code § 18.2-460. Accordingly, we will confine our analysis to subsection (A).

[appellant] or his property and is physically resisted' and '(2) passive direct obstruction, where the officer seeks to make [appellant] act directly and [appellant] refuses or fails to act as required'" (emphasis omitted))). Summarily, "[a]s long as the obstructive behavior 'clearly indicat[es] an intention on the part of the accused to prevent the officer from performing his duty,' the evidence proves the offense.'" Id. at 256, 784 S.E.2d at 308 (quoting Jones v. Commonwealth, 141 Va. 471, 479, 126 S.E. 74, 77 (1925)).

Appellant argues that his actions do not constitute obstruction of justice because subsection (A) prohibits obstruction of justice without "threats or force" whereas subsection (B) prohibits obstruction of justice "by threat or force." Because appellant was not charged under subsection (B), appellant contends that these following acts are irrelevant: "pretending to wa[]ve a firearm at the police, . . . claiming to have hostages, and . . . threatening to get his 'MAC.'" Moreover, according to appellant, his relatively simple act of refusing to exit the apartment building does not constitute a violation of subsection (A). Appellant supports his argument by citing to Ruckman, Atkins v. Commonwealth, 54 Va. App. 340, 678 S.E.2d 834 (2009), Henry v. Commonwealth, 21 Va. App. 141, 462 S.E.2d 578 (1995), Molinet, and Thorne.

Appellant's case is factually similar to Henry, Molinet, and Thorne. In Henry v. Commonwealth, officers arrived at Henry's home to arrest him. 21 Va. App. at 145, 462 S.E.2d at 580. The officers were told Henry would appear soon but then saw Henry running out of the back door and into the woods. Id. They pursued Henry and found him sitting by a creek. Id. One officer raised his service weapon, ordered Henry not to move, and "informed him that he was under arrest." Id. That officer maintained his stance for about thirty seconds, approached Henry, and grabbed him by the arm. Id. Henry struck the officer, shouted at him, and ran. Id. Henry was apprehended "after a brief scuffle." Id. This Court upheld Henry's conviction, determining that Henry obstructed justice "[a]fter his escape, during [the] third encounter,

- 6 -

[when] Henry . . . imped[ed] the officers in their attempt to regain custody of him when he struggled with the officers." Id. at 146-47, 462 S.E.2d at 581.

In Molinet v. Commonwealth, an officer was providing assistance "by maintaining a 'sphere of control' to 'keep the scene safe;'" the officer did so by "direct[ing] bystanders to walk around the incident." 65 Va. App. at 575, 779 S.E.2d at 232. Molinet "approached the officer from behind . . . 'walked up in the middle of what [the officers] were doing[,] and began speaking to . . . the subjects of [the] investigation." Id. The officer requested that Molinet step back, but Molinet refused. Id. The officer repeated this command several times and at one point directed Molinet to the curb. Id. Molinet stepped toward the officer, shouted profanities at him, and made "a threatening gesture with his arms." Id. The officer tried speaking to Molinet; Molinet responded by shouting profanities. Molinet did this twice more before being arrested for obstruction of justice. Id. at 575, 779 S.E.2d at 233. This Court affirmed Molinet's conviction. Id. at 578, 779 S.E.2d at 234. The evidence established that the officer's duty was to "secure the perimeter;" Molinet's disruptive and threatening behavior required the officer's attention; thus, the officer was unable to fulfill his duty. Id. at 580, 779 S.E.2d at 235. Molinet intended to prevent the officer from fulfilling his duty; Molinet testified that he was trying to ensure the subjects of the investigation were not arrested. Id. at 581, 779 S.E.2d at 235. However, Molinet admitted that he did not know these women or what had occurred; thus, there was sufficient evidence for the jury to find Molinet intended to prevent the officer from performing his duty. Id.

In Thorne v. Commonwealth, an officer conducted a traffic stop and approached the vehicle. Thorne, the driver, provided identifying information but then became agitated, stating that the officer had no reason to pull her over. 66 Va. App. at 251, 784 S.E.2d at 305. The officer explained he needed to test the tint on her windows and asked her to roll it down further;

he also asked her to comply so that he "could see into the back seat." Id. Thorne refused and shouted in response. Id. at 251, 784 S.E.2d at 306. The officer asked Thorne this "at least five times" and also asked her to exit the vehicle. Id. She did neither. Id. The officer explained Thorne needed to roll down the window more so he could perform the tint test, and if she did not, she would be charged with obstruction of justice; Thorne continued to be combative. Id. This continued for about nine minutes. Id. After backup arrived, Thorne did as requested. Id. Thorne was ultimately convicted of a violation of Code § 18.2-460(A). This Court upheld the conviction. Regardless of the fact that Thorne ultimately complied, Thorne prevented the officer from testing the tint by refusing to roll down her window and by shouting at the officer, and she intended to do so because her responses indicated she understood what the officer was attempting to do. Id. at 258, 784 S.E.2d at 309.

Appellant's case is distinguishable from Atkins and Ruckman. In Atkins v. Commonwealth, Officer Bennett saw a license plate dangling from Atkins's car. 54 Va. App. at 342, 678 S.E.2d at 835. Atkins continued driving. Officer Bennett noticed that Atkins had parked and was conversing with Officer Crowder. Officer Bennett ran Atkins's license plate and determined that Atkins was driving a stolen vehicle. Id. He "told Crowder to detain Atkins but Atkins ran into the woods." Id. Atkins was discovered four hours later. He provided the officers with a false name, so he was charged with violating Code § 18.2-460(A). This Court reversed Atkins's conviction because "'obstruction of justice does not occur when a person fails to cooperate fully with an officer or when the persons' conduct merely renders the officer's task more difficult' or 'frustrat[es] [his or her] investigation.'" Id. at 343, 678 S.E.2d at 835 (quoting Ruckman, 28 Va. App. at 429, 505 S.E.2d at 390). Thus, "an accused's hiding or seeking to escape [an] officer by merely running away [is] not such an obstruction as the law contemplates.'" Id. (quoting Ruckman, 28 Va. App. at 429, 505 S.E.2d at 389).

In Ruckman v. Commonwealth, an officer responded to the scene of a car accident; Ruckman and another man were riding in a truck involved in the collision. 28 Va. App. at 430, 505 S.E.2d at 389. In the initial interview, Ruckman said he felt "too intoxicated to drive . . . and that [a second individual] was driving;" he repeated this in a second interview. Id. In a third interview, he indicated he could not remember who drove. Id. The officer charged him with obstruction of justice. The trial court found Ruckman "knowingly impeded [the officer's investigation]" and convicted him. Id. This Court reversed because "[n]o proof was offered that Ruckman opposed or resisted [the officer's] investigation of the accident or [the officer's] attempt to file his report." Id. The officer received what he considered to be inconsistent statements from Ruckman; "while these statements may have frustrated [the] investigation, the statements did not oppose, impede, or resist [the officer's] efforts to conduct an investigation." Id. at 431, 505 S.E.2d at 390.

Appellant's actions constitute a violation of subsection (A) of Code § 18.2-460. Appellant prevented the officers from fulfilling their duties and intended to do so. Appellant did not simply "'fail[] to cooperate fully with an officer or . . . render[] the officer's task more difficult' or 'frustrat[e] [the officer's] investigation.'" Atkins, 54 Va. App. at 343, 678 S.E.2d at 835 (quoting Ruckman, 28 Va. App. at 429, 505 S.E.2d at 390). Appellant clearly "oppose[d], impede[d], or resisted [the officers' performance of their duties]." Ruckman, 28 Va. App. at 430, 505 S.E.2d at 389. Similar to Henry, Molinet, and Thorne, appellant disobeyed the officers' commands; he refused to stop, refused to get on the ground, and refused to exit the apartment building. Appellant yelled that this was a hostage situation and that the officers would have to kill him. Appellant also threateningly gestured at the officers and at one point brandished his cell phone at them as if it were a firearm. This "standoff" lasted between thirteen and thirty minutes. Appellant's actions demonstrated that he understood or should have reasonably

- 9 -

understood that the officers' duties included apprehending him.  Moreover, the evidence was sufficient to establish that appellant's actions clearly indicated appellant's intention to prevent the officers from performing their duty based on his refusals to comply with the officers' legitimate orders.

CONCLUSION

Appellant intended to and did obstruct the officers from performing their duties.  The trial court's determinations were not plainly wrong, and the evidence was sufficient to support these determinations.  Thus, we affirm appellant's conviction.

<u>Affirmed.</u>