COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and AtLee
Argued at Norfolk, Virginia

PUBLISHED

LAMBERTO MALDONADO, A/K/A
 LAMBERTO MOLDANADO

                                                                    OPINION BY
v.      Record No. 0254-18-1                          JUDGE ROBERT J. HUMPHREYS
                                                                    JULY 16, 2019

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
                                     W. Revell Lewis, III, Judge

            Brandon L. Wilder (Bush & Taylor, P.C., on brief), for appellant.

            Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
            Herring, Attorney General, on brief), for appellee.


        Following a bench trial on December 28, 2017, the Circuit Court of Northampton County

("circuit court") found appellant Lamberto Maldonado ("Maldonado") guilty of misdemeanor

obstruction of justice, in violation of Code § 18.2-460(A).[1]  The circuit court later sentenced

Maldonado to twelve months in jail, with nine months suspended.  On appeal, Maldonado argues

that "[t]he [circuit] court erred in denying [his] motion to strike and finding him guilty of

obstruction when the evidence was insufficient to prove beyond a reasonable doubt that [he]

either hindered the authorities' ability to perform their job or made the authorities' job more

difficult."

---

        [1] The circuit court also convicted Maldonado's daughter, Sonia Maldonado, of
obstruction of justice in a joint bench trial.  This Court dismissed her appeal by order dated
August 17, 2018, for failure to timely file a petition for appeal.

## I. BACKGROUND

The evidence reflects that on the evening and early morning hours of December 29-30, 2016, Maldonado's son, Everardo, was at Kelly's Pub in Cape Charles. Before arriving at Kelly's Pub, Everardo picked up a friend, Justin Travis ("Travis"), in a Nissan pickup truck registered to Maldonado. Everardo and Travis then traveled to Kelly's Pub and proceeded to consume alcoholic beverages.

Raven Brady ("Brady"), an acquaintance of both Everardo and Travis, was at Kelly's Pub that same evening. Brady and Everardo exchanged phone numbers that night. According to Brady, both Everardo and Travis were drinking alcohol at Kelly's Pub. She also described Travis as "extremely intoxicated—basically sleeping at the bar, and Everardo wasn't as intoxicated, but there were indications that they were tipsy." Brady left Kelly's Pub about the same time as Everardo and Travis. As Everardo and Travis left, Brady witnessed Everardo in the driver's seat of the pickup truck and Travis in the passenger seat.

Brady received a telephone call from Everardo at approximately 2:33 a.m. According to Everardo, "there had been some type of accident." Everardo also asked Brady to "come and get him." Though Brady told Everardo that she would come and get him, she did not do so.

At approximately 3:10 a.m., Deputy Roger Pike ("Deputy Pike") of the Northampton County Sheriff's Office was dispatched to investigate a car accident off of northbound Route 184 in Northampton County. When Deputy Pike arrived at the scene of the accident, he saw that a Nissan pickup truck had lost control on the right side of the highway, rolled over, hit a ditch, and made several turns. The pickup truck came to rest approximately 100-200 feet off the highway. Deputy Pike stated that the pickup truck was not easily visible from the highway. Additionally, while Deputy Pike did not see anyone inside or around the scene of the accident upon his arrival, he found a cell phone inside of the pickup truck.

During Deputy Pike's investigation, Maldonado's daughter, Sonia, approached the scene of the accident and identified herself. Deputy Pike noted that Sonia arrived at the scene of the accident approximately ten minutes after he did. During this initial encounter, Deputy Pike explained to Sonia that he was attempting to find the driver of the pickup truck. Sonia told Deputy Pike that the pickup truck was registered to her father, Maldonado, but "that someone took the truck from her dad's." Sonia also stated that she "didn't know who had taken [the pickup truck], and then she started asking questions later on about how to report it stolen." Before leaving the scene of the accident, Sonia provided Deputy Pike with her cell phone number.

Deputy Pike spoke with Maldonado at approximately 3:47 a.m. at Maldonado's home—the registered address for the pickup truck. Deputy Pike asked Maldonado if he knew where the pickup truck was or if anyone had taken it. Maldonado, however, only answered Deputy Pike's questions with the assistance of Sonia as a translator. Further, Deputy Pike indicated that he did not know if Maldonado understood the questions that he asked. The record does not reflect any substance of the conversation between Deputy Pike and Maldonado.

Virginia State Trooper Daniel Wallace ("Trooper Wallace") also investigated the pickup truck accident. Similar to Deputy Pike, Trooper Wallace stated that the accident was not easily visible from the highway. Trooper Wallace called Sonia with the phone number that she provided to Deputy Pike. During the conversation, Sonia informed Trooper Wallace that the pickup truck was stolen from her father's home and that she did not know who took the vehicle. Trooper Wallace also informed Sonia that she could be charged with obstruction of justice if she made any false statements to the police. Sonia subsequently became what Trooper Wallace "consider[ed] aggressive . . . and insisted that the vehicle had been stolen."

At some point during the investigation, Trooper Wallace traced the cell phone discovered by Deputy Pike to Travis. When Trooper Wallace called Sonia a second time and asked if she knew Travis, Sonia denied knowing Travis "or why he would be inside of the vehicle."

Around 8:30 a.m. that morning, Trooper Wallace visited Maldonado's home with Deputy William Lewis ("Deputy Lewis") of the Northampton County Sheriff's Office. Trooper Wallace hoped to learn more about the pickup truck accident and locate the driver. At the time, it was Trooper Wallace's understanding that Maldonado's son, Everardo, also resided at the home. Upon arriving at Maldonado's home, Trooper Wallace identified himself to Maldonado and spoke with him in English. When Trooper Wallace asked Maldonado if he knew the reason for the visit, Maldonado replied in "clear and precise" English that "[m]y truck was stolen." Maldonado also "made a gesture to a parking space that would be at the end of the [residence]." Additionally, when Trooper Wallace questioned Maldonado about his son Everardo and if Everardo was home, Maldonado responded by stating that he had not seen Everardo and that Everardo was not home.

Trooper Wallace stated that he "felt very confident that [Maldonado] understood that we were trying to speak to his son." Similarly, Deputy Lewis noted that he and Maldonado conversed in English and stated that he could understand Maldonado's responses to his questions "perfectly."

After speaking with Maldonado "for a good ten to fifteen minutes," Trooper Wallace and Deputy Lewis asked Maldonado to see if Everardo was inside the house. Maldonado then "pulled his phone from out of his pocket" and stated "[w]e need to call my daughter Sonia." Maldonado subsequently held an extended, fifteen to twenty-minute conversation with Sonia in Spanish. Trooper Wallace also spoke to Sonia on Maldonado's phone. Trooper Wallace explained to Sonia that he believed that Everardo was the driver of the pickup truck and that he

wanted to speak with Everardo. After ending his phone call with Sonia, Maldonado went inside his home and spoke with someone out of the officers' view for approximately ten minutes. Trooper Wallace and Deputy Lewis later identified the individual that Maldonado was speaking with as Everardo.

Maldonado eventually allowed Trooper Wallace and Deputy Lewis inside his home, where the officers immediately encountered Everardo. When Trooper Wallace and Deputy Lewis asked Everardo about his knowledge of the pickup truck accident, Everardo denied any involvement and explained that he never left home the night of the accident. According to Trooper Wallace, Everardo "was very shortcoming with us where he wouldn't answer us directly on a lot of questions that we asked . . . . He'd just say, I don't know." At one point during the conversation, Deputy Lewis noticed abrasions on one of Everardo's hands and asked about the injury. Everardo quickly replied that he was "a water man" who "gets cuts all the time."

Later that same morning, Deputy Lewis learned from Travis's employer that Travis was at Sentara Norfolk Hospital. Deputy Lewis subsequently spoke with Travis on the phone. He also met with Travis after Travis was discharged from the hospital. According to Deputy Lewis, Travis told him "what had happened" the night of the pickup truck accident.

On July 10, 2017, Maldonado was directly indicted on one count of providing a false report to a law enforcement official, in violation of Code § 18.2-461, and one count of obstruction of justice, in violation of Code § 18.2-460. During the subsequent bench trial, which took place on December 28, 2017, the Commonwealth called Brady, Deputy Pike, Trooper Wallace, Deputy Lewis, and Travis as witnesses, among others. During their testimony, both Trooper Wallace and Deputy Lewis noted Maldonado's initial reluctance to aid the police with their investigation. Additionally, Travis confirmed that Everardo had been driving the truck on the night of the crash. Although he had very little recollection of the accident or the immediate

- 5 -

aftermath, Travis recalled Maldonado telling him to wake up because there had been an accident. Travis was also certain that Maldonado had been at the accident scene, stating that Maldonado's face was the only thing he recognized "at the whole scene."

After the Commonwealth rested, the circuit court granted Maldonado's motion to strike the false report charge but denied it as to the remaining obstruction of justice offense. At the conclusion of all the evidence, the circuit court convicted Maldonado of misdemeanor obstruction of justice. This appeal follows.

## II. ANALYSIS

### A. Standard of Review

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Melick v. Commonwealth, 69 Va. App. 122, 144 (2018) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Burrous v. Commonwealth, 68 Va. App. 275, 279 (2017) (quoting Kelly, 41 Va. App. at 257-58). In conducting our analysis, we are mindful that "determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." Miller v. Commonwealth, 64 Va. App. 527, 536 (2015) (citing Commonwealth v. Taylor, 256 Va. 514, 518 (1998)).

### B. Obstruction of Justice

Maldonado argues that the evidence adduced at trial was insufficient to support his obstruction of justice conviction. Maldonado contends that he "never resisted" the law

enforcement investigation of the accident. Maldonado admits that he initially told law enforcement officials that his truck was stolen and falsely denied knowledge of Everardo's whereabouts. He adds, however, that "soon thereafter" he "advised [law enforcement] that Everardo was at home and let them speak with Everardo." Accordingly, Maldonado argues that while his "initial report may have frustrated law-enforcement's investigation, the statements did not prevent, or impede their efforts to conduct an investigation."

Maldonado was indicted and convicted under Code § 18.2-460(A).[2] That statute provides, in pertinent part, that

> [i]f any person without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer . . . , he is guilty of a Class 1 misdemeanor.

"To constitute an obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer[.]" Jordan v. Commonwealth, 273 Va. 639, 648 (2007) (quoting Jones v. Commonwealth, 141 Va. 471, 478-79 (1925)). Rather, our Supreme Court has consistently explained that

> there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to "obstruct" ordinarily implies opposition or resistance by direct action . . . . It means to obstruct the officer himself not merely to oppose or impede the process with which the officer is armed.

Id. (quoting Jones, 141 Va. at 478-79). Acts sufficient for an obstruction conviction "may be either active or passive." Thorne v. Commonwealth, 66 Va. App. 248, 255 (2016).

We also recognize, however, that "obstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's

---

[2] Subsection (A) prohibits obstruction of justice without "threats or force." Compare Code § 18.2-460(A), with Code § 18.2-460(B).

task more difficult but does not impede or prevent the officer from performing that task." Ruckman v. Commonwealth, 28 Va. App. 428, 429 (1998). "Consequently, actions that make an officer's discharge of his or her duty simply more difficult, but achievable, do not constitute obstruction of justice without force." Thorne, 66 Va. App. at 255 (citing Jones, 141 Va. at 477-80).

Here, Maldonado relies upon Ruckman and argues that because he did not prevent Trooper Wallace and Deputy Lewis from ultimately interviewing Everardo, his actions and behavior merely inconvenienced them. The Attorney General, in turn, relies upon Thorne to assert that the approximately forty-minute delay in interviewing Everardo was a sufficient impediment to the law enforcement investigation to amount to obstruction of justice. However, neither party addresses an ancillary point we think important to resolving the issue before us: under these circumstances, did Maldonado owe any legal duty to cooperate with the law enforcement officers in the conduct of their investigation?

Our Supreme Court has never explicitly addressed the elements of the offense set forth in Code § 18.2-460(A). It has, however, addressed the elements of the similar offense in subsection C of that statute. See Washington v. Commonwealth, 273 Va. 619, 625 (2007) (characterizing the elements of the offenses set forth in subsections A and B as "straightforward"). Pursuant to such guidance and other precedent from our Supreme Court, we have previously applied a two-step analysis to determine whether the evidence was sufficient to prove obstruction of justice under that statute. See Molinet v. Commonwealth, 65 Va. App. 572, 578 (2015). First, the evidence must be sufficient for a rational fact finder to conclude that the accused's "actions did, in fact, prevent a law-enforcement officer from performing his duties." Id. Second, the evidence must be sufficient for a rational fact finder to conclude that the accused acted with an intent to obstruct—i.e., prevent—an officer from performing his or her duty. Id. at 580-81; see

also Thorne, 66 Va. App. at 256 ("As long as the obstructive behavior 'clearly indicat[es] an intention on the part of the accused to prevent the officer from performing his duty,' the evidence proves the offense." (citation omitted)).

As a preliminary matter, Maldonado's assignment of error does not challenge the sufficiency of the evidence to prove his intent to prevent law enforcement officers from questioning Everardo—and we assume without deciding that the second element required for an obstruction conviction under Code § 18.2-460(A) is satisfied. See Rule 5A:12(c)(1)(i) ("Only assignments of error assigned in the petition for appeal will be noticed by this Court."). Instead, Maldonado's assignment of error only addresses whether his actions prevented a law enforcement officer from performing his duty. Accordingly, we limit our appellate review to that issue. It then follows that our analysis of Maldonado's assignment of error necessarily begins with a determination of what sort of acts the General Assembly intended to criminalize when it prohibited "[o]bstruct[ing] any law enforcement officer . . . in the performance of his duties." Code § 18.2-460(A).

Ascertaining the General Assembly's intent in promulgating Code § 18.2-460(A) must begin with a review of the common law, since we trace the modern crime of obstruction of justice to a common law category of offenses related to the fair and orderly administration of justice. The common law remains the law of the Commonwealth unless modified by the General Assembly. See Code § 1-200. Sir William Blackstone noted that the common law considered some twenty-two different intentional acts as "Offenses Against Public Justice."[3] Most of the

---

[3] In summary, Blackstone lists the following as examples of offenses against public justice: embezzling; vacating or falsifying court records; subornation of perjury or manufacturing false evidence by a public officer; obstructing the execution of a lawful process; escape by a person from custody; escape from jail or prison; assisting another to escape from custody or imprisonment; accepting a reward under false pretenses; receiving stolen goods; bribery of a witness; bribery or attempting to corruptly influence public officers, witnesses, and

offenses categorized by Blackstone have been codified in the Commonwealth as separate offenses such as perjury, bribery, escape, and barratry.  See generally Code §§ 18.2-434 to -480.1 (listing "crimes against the administration of justice" in the Commonwealth). Significantly, we note that the common law did not, without more, criminalize either lying to a law enforcement officer or a failure to cooperate fully with an investigation, as sufficient to constitute an offense against the administration of justice.  Indeed, the common law analogue to Code § 18.2-460(A) was, as Blackstone phrased it, "obstructing the execution of lawful process." 4 William Blackstone, Commentaries *129.

We further note that the General Assembly did create other statutory offenses, separate from obstruction of justice, that criminalized both lying to, and the failure to assist, law enforcement officers, provided that certain *additional* conditions were met.  For example, Code § 18.2-462 makes it a criminal offense to "delay, impede, obstruct, prevent, or hinder the investigation, apprehension, prosecution, conviction or punishment of any person."  However, that statute specifically exempts members of a suspect's immediate family—including a parent such as Maldonado—from its application.  Likewise, Code § 18.2-461 punishes lying to a law enforcement officer, but only in the context of making a false report—a separate offense from obstruction of justice that Maldonado was indicted for but acquitted of.  Similarly, Code § 18.2-463 criminalizes the failure to assist a law enforcement officer in a criminal case provided one is expressly told by a law enforcement officer that they are required to provide specific assistance in the execution of a specific duty.  Thus, we conclude that in creating such separate

---

jurors; compounding a felony; barratry; champerty or intermeddling in a lawsuit to which one is not a party; commencing a prosecution for personal gain; conspiracy to indict an innocent person; perjury; gross negligence or corruption of judges, magistrates, and law enforcement officers; and extortion through the abuse of the office of a judge, magistrate, or law enforcement officer.  See generally 4 William Blackstone, Commentaries *127-41.

offenses, the General Assembly did not consider that either the common law or Code

§ 18.2-460(A) already criminalized either lying to a law enforcement officer, without more, or

refusing to admit law enforcement officers who lack either an arrest warrant or search warrant to

one's home to further an investigation.[4]

We are unpersuaded by the Attorney General's counter-argument that the circuit court

must have impliedly concluded that Maldonado "conspired" with Sonia to "cover up the criminal

operation of [Maldonado's] pickup truck by Everardo[.]"[5] We also must reject the Attorney

General's argument that Maldonado's actions during his earlier encounter with law enforcement

officers—Deputy Pike's first visit to Maldonado's home the night of the accident—standing

alone amounted to obstruction of justice under Code § 18.2-460(A). We reach this conclusion

because the record is insufficient to permit us to evaluate the Commonwealth's argument. The

evidence reflects only that Deputy Pike spoke with Maldonado at approximately 3:47 a.m. the

night of the pickup truck accident. This conversation took place on Maldonado's property, with

Sonia acting as an interpreter for Deputy Pike and Maldonado. Aside from describing the timing

and circumstances of the conversation, however, the record does not reflect its substance. At no

point did Deputy Pike testify about the questions that he asked Maldonado or Maldonado's

---

[4] Other jurisdictions have reached similar conclusions by either making it a separate crime to lie to a law enforcement officer concerning an investigation or by affirmatively recognizing inherent limits to the crime of obstructing justice. See, e.g., 18 U.S.C. § 1001 (making it a felony to "knowingly and willfully . . . make[] any materially false, fictitious, or fraudulent statement or representation" in the course of "any matter within the jurisdiction of the executive, legislative, or judicial branch" of the federal government). But see United States v. Surasky, 976 F.2d 242, 246 (5th Cir. 1992) ("[A] false statement made by a defendant to law enforcement officers cannot constitute an obstruction of justice unless the statement obstructs or impedes the investigation at issue *significantly*." (emphasis added)).

[5] We note that a conspiracy is a separate offense defined as "an agreement between two or more persons by some concerted action to commit an offense." Carr v. Commonwealth, 69 Va. App. 106, 117 (2018) (quoting Wright v. Commonwealth, 224 Va. 502, 505 (1982)). Maldonado was not convicted or even charged with conspiracy.

responses to his questions. Therefore, without speculating, we cannot discern what effect Maldonado's actions or answers had on the conduct of Deputy Pike's investigation.

Reviewing the record and considering binding precedent from this Court and our Supreme Court, we conclude that the evidence adduced at trial requires us to reach a similar conclusion regarding Maldonado's subsequent conversation with Trooper Wallace and Deputy Lewis the next morning.

The Commonwealth principally relies upon Thorne, essentially arguing that if causing a nine-minute delay in the investigation amounted to obstruction of justice in that case, surely the approximately forty-minute delay in Trooper Wallace and Deputy Lewis's ability to pursue the investigation in this case must also constitute obstruction of justice.[6]

A cursory reading of Thorne may suggest an apparent conflict with our holding in Ruckman. However, unlike the situation here, Thorne involved a proper detention based upon reasonable suspicion of the commission of a traffic offense pursuant to Terry v. Ohio, 392 U.S. 1 (1968), and its progeny. Thus, while the defendant in Thorne was not required to assist the officer with his investigation, she was required to allow him to conduct it. Indeed, Thorne was properly detained and not free to go about her business until the officer's reasonable suspicions concerning the window tint on her vehicle were either confirmed or dispelled—including by

---

[6] In Thorne, we affirmed the obstruction of justice conviction of a defendant who, for some nine minutes, refused a police officer's repeated commands to lower her car windows for a "window tint" inspection. Thorne, 66 Va. App. at 250. The evidence in that case reflected that a police officer conducted a traffic stop of a vehicle suspected of having illegally tinted windows. Id. at 250-51. After approaching the vehicle, the officer asked Thorne—the driver of the vehicle—to roll down her window so that he could test the legality of the window tint. Id. at 251. The officer also asked the defendant to allow him to see into the back seat for officer safety. Id. The defendant, however, refused to roll down her window, despite being asked by the officer "at least five times." Id. The defendant told the officer that he had no reason to stop her, and yelled repeatedly, "I know my rights! You don't know my rights." Id. It was not until backup officers arrived nine minutes later that the defendant complied with the police officer's request and allowed him to test the window tint. Id.

removing her from the vehicle if necessary in order to do so. Thus, Thorne was not "merely making the officer's job more difficult." Thorne, 66 Va. App. at 259. Rather, because of her conduct, the officer "was entirely unable to perform his duties related to the basis for the traffic stop." Id.

Here, Maldonado's conduct did not prevent or impede Trooper Wallace and Deputy Lewis from performing their duty since their "duty" to investigate any criminal offense was necessarily circumscribed by the Fourth Amendment's constitutional prohibition against a warrantless entry to a private home without consent or a judicially authorized warrant. As noted above, this conversation took place on Maldonado's property at the door to his home. Neither Trooper Wallace nor Deputy Lewis were armed with either a search warrant or an arrest warrant for Maldonado's son, Everardo. Unlike the case in Thorne, neither law enforcement officer detained or seized Maldonado at any point during the conversation, and Maldonado never refused a lawful command from either officer. Maldonado simply initially declined Trooper Wallace and Deputy Lewis's request to enter his home to see if Everardo was inside the house and to question Everardo if Everardo was inside. Maldonado also initially falsely denied that Everardo was present in the home. While Maldonado's actions resulted in a delay in the interview of Everardo of approximately forty minutes, the record does not reflect how this delay constituted a significant impediment to the investigation. Additionally, the evidence reflects that neither Trooper Wallace nor Deputy Lewis informed Maldonado that they suspected Everardo was the driver of the pickup truck the night of the accident or otherwise a suspect in a crime. Instead, the record only indicates that Trooper Wallace and Deputy Lewis asked Maldonado if he knew the reason for their visit. In response, Maldonado stated that his pickup truck was stolen and gestured to a parking space near his home. No further information was apparently provided to Maldonado before Wallace and Lewis requested entry to speak to Everardo.

Based upon our decision in <u>Ruckman</u> and the overall statutory scheme that requires more than this record contains to criminalize Maldonado's actions, we hold that the evidence here was insufficient to constitute obstruction of justice. In <u>Ruckman</u>, we explained that actions that merely frustrate a police officer's investigation, but do not "oppose, impede, or resist" an officer's lawful efforts to conduct an investigation, do not constitute obstruction of justice as contemplated by Code § 18.2-460(A). <u>Ruckman</u>, 28 Va. App. at 431. We conclude that admonition of <u>Ruckman</u> is applicable here. Undeniably, Maldonado's evasive answers and behavior frustrated Trooper Wallace and Deputy Lewis's investigation for a period of time, although the record does not reflect if or how this delay impacted the investigation. It is also clear that Maldonado lied to law enforcement officers concerning Everardo's presence in his home delaying his interview by Trooper Wallace and Deputy Lewis for approximately forty minutes. Lying is broadly prohibited by a far higher power than this Court, and we certainly do not condone it. However, there is no statute or case law that stands for the proposition that lying to law enforcement officers during a consensual encounter, or failing to admit them to one's home on request, constitutes an obstruction of justice offense in the Commonwealth and as noted, to the extent similar actions have been criminalized, it has been done via *other* statutory offenses that have additional requirements and with which Maldonado was not charged.

In conclusion, for the reasons stated, we hold that the circuit court erred in denying Maldonado's motion to strike the evidence as legally insufficient to support a conviction of misdemeanor obstruction of justice. Accordingly, we reverse Maldonado's conviction for that offense and dismiss Count 2 of the indictment.

<u>Reversed and dismissed.</u>