COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Huff and Lorish
Argued at Norfolk, Virginia

MACK TYSON REGIS

v.      Record No. 0597-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE GLEN A. HUFF
MAY 16, 2023

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie A. Taylor Arrington, Judge

Trevor Jared Robinson for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General; David A. Mick, Assistant Attorney General, on
brief), for appellee.

In a bench trial, the Circuit Court of the City of Chesapeake (the "trial court") convicted

Mack Tyson Regis ("appellant") of malicious wounding, in violation of Code § 18.2-51, and

abduction, in violation of Code § 18.2-47.  Appellant challenges the sufficiency of the evidence

to sustain his convictions.  This Court affirms the trial court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  This

standard requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

---

* This opinion is not designated for publication.  *See* Code § 17.1-413.

all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

On May 4, 2021, Kayla Cuffee visited appellant's apartment with her two-year-old son to celebrate appellant's birthday. Cuffee testified that appellant was her boyfriend and that she became upset during the visit because she felt like appellant was ignoring her. After confronting appellant about it, she picked up her son and told him she was leaving. Appellant then punched her on the left side of her face, causing her to drop her son. He then grabbed her by her shirt collar and pressed up against her neck, restricting her breathing. As she fought against him, he pushed her down, chest first, onto some couch cushions that were on the floor.[1] He held her there while she pushed against him and pleaded for him to stop. Appellant told her to shut up and punched her repeatedly in the face and the back of her head. She did not remember how many times he punched her.

Cuffee eventually escaped appellant's grasp and ran into the bathroom. She tried to shut the bathroom door but appellant grabbed it from the other side. As they wrestled with the door, Cuffee's son put his fingers in the door frame, so she released her hold on the door for fear of hurting her son's fingers. Appellant entered the bathroom, grabbed Cuffee's shirt collar, pulled her to the ground, and punched her in the face. Cuffee tried to place her son in the bathtub, but appellant stopped her and again punched her in the face.

Cuffee escaped appellant's grasp once more and ran to the front door of the apartment. While she was trying to unlock the door, appellant grabbed her hair and pulled her back toward

---

[1] Cuffee testified that the cushions had a sheet on them and that appellant had told her that the cushions were there for her son. Appellant testified that he put the cushions there as a bed for Cuffee's son.

the kitchen, pulling out some of her braids in the process. Once in the kitchen, appellant grabbed a knife from a drawer, placed it against Cuffee's throat, and threatened to kill her. She pushed the knife away, and they struggled to gain control of it. She got the knife out of his hands, and they fell over the back of a chair; appellant then bit the right side of her face. He got on top of her and punched her repeatedly while accusing her of cheating on him. With the knife in his left hand, appellant "came down like he was about to stab" Cuffee. She covered her face, and he slashed her above her right eye. He continued punching her and then slashed her again with the knife, this time under her right eye.

At that point, Chesapeake Police Officers Cody Jones and Aaron Rowe knocked on the apartment door, investigating a domestic disturbance call from one of appellant's neighbors. Officers Jones and Rowe heard Cuffee screaming for help from the other side of the door. Appellant placed his hand over Cuffee's mouth, told her to be quiet, and pushed her into the bathroom. He went to the front door, told the officers that everything was fine, and tried to send them away. Cuffee continued to scream, and Officer Rowe kicked down the door.

When the officers entered, they found Cuffee in the bathroom "bleeding profusely from her face," with appellant holding her arm. They also saw "blood on the floor and walls, . . . pieces of hair on the floor," and the bloody knife on the couch. Officer Jones handcuffed appellant, and Officer Rowe led him out of the apartment. Appellant told Officer Rowe that Cuffee had cheated on him and that she "was going to clean this mess up." He had a small cut on his pinky finger, a cut on his lip, and a cut on his shoulder, all of which he claimed Cuffee had inflicted.

Officer Jones called the paramedics because Cuffee was losing a lot of blood. She had a laceration over her right eye, and her eyes were swollen nearly shut. Cuffee was transported to

the hospital, where she was diagnosed with non-intractable vomiting with nausea, traumatic subarachnoid hemorrhage, a facial contusion, and a facial laceration.

Appellant's testimony differed substantially from Cuffee's. He testified that he and Cuffee had never been in a relationship and he was cheating on his actual girlfriend with Cuffee. Nevertheless, Cuffee became upset that appellant was not paying attention to her, accused him of cheating, and demanded to see his phone. He claimed that when he told her to leave because she was ruining his birthday, she punched him in the mouth.

Appellant again told her to leave but she kept demanding to see his phone. When he refused, she grabbed the kitchen knife and swung it at him, slicing his pinky finger. She continued to swing the knife at appellant, who tripped over a cushion as he was backing up. She cut his hand again and tried to cut his throat but only managed to cut his shoulder. He kept trying to take the knife from her "without hurting her," at one point pushing her in the face with his open palm, causing her to fall. She got up and charged at him again. As they wrestled, they tripped over the couch and fell. Cuffee hit the left side of her face on the coffee table. Appellant said he believed that was when the knife "poked her." She got up, kicked her crying son to the floor, and ran into the bathroom intentionally smearing her blood around the apartment and pulling out her hair. Appellant testified that she likely did so to create an incriminating scene but admitted that neither of them knew at that point that the police had been called.

The police knocked at the door while Cuffee was in the bathroom. Appellant testified that he told the police everything was fine because he did not want Cuffee to get in trouble for attacking him. When Officer Rowe kicked down the door, appellant was checking on Cuffee's injuries and "was very . . . caring for her." He admitted telling the police that Cuffee was cheating on him; he claimed he said that only because he was traumatized.

According to appellant, he never punched Cuffee, bit her, or cut her with the knife. When asked why she had two black eyes, he responded that "[s]he has really puffy eyes," may have hurt them while plucking out her eyelashes, and had smeared the blood on her face to dramatize her injuries.

After closing arguments, the trial court dismissed several of appellant's charges for insufficient evidence. The trial court found, however, that credibility was an "easy call" because appellant's testimony was "just really bordering on almost ridiculous. It didn't make sense." By contrast, the court found that the injuries depicted in the photographs and medical records were consistent with Cuffee's testimony. Accordingly, the court found appellant guilty of malicious wounding and abduction by force and sentenced him to fifteen years' imprisonment with eleven years and four months suspended. This appeal followed.

ANALYSIS

Regis's sole argument on appeal is that the evidence was insufficient to support his convictions. He does not argue that the Commonwealth's evidence, if credited, failed to establish any of the offense elements. Rather, he argues that his testimony was credible and provided a reasonable hypothesis of innocence that the trial court erroneously rejected.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v.*

- 5 -

*Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Appellant insists his own testimony was credible and established his innocence. But "determining the credibility of witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). And the trial court here found that appellant's testimony was "just really bordering on almost ridiculous" and "didn't make sense." "[I]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)). Instead of believing appellant's testimony, the trial court believed Cuffee's testimony, finding that it was credible and corroborated by the photographs and medical records. Appellant's only argument attacking Cuffee's testimony (other than that it was contradicted by appellant's testimony[2]) is that the injuries to her face would have been more serious if appellant had stabbed her downward, as she claimed. Such an argument is insufficient to render her testimony entirely unworthy of belief. Because Cuffee's testimony was sufficient to establish the offense elements and there is no reason to disturb the trial court's credibility finding, this Court affirms appellant's convictions.

---

[2] For example, after noting Cuffee testified that she and appellant were in a relationship while appellant testified that they were not, appellant asserts that "[i]t is apparent that Ms. Cuffee sought to distort the status of their relationship." Regis's bare assertions that he told the truth while Cuffee lied are insufficient to overturn the trial court's contrary credibility determination.

CONCLUSION

For the foregoing reasons, this Court affirms the judgment of the trial court.

*Affirmed.*