COURT OF APPEALS OF VIRGINIA

Present:    Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued by videoconference


DENNIS LEE MAYS

MEMORANDUM OPINION* BY
v.       Record No. 1492-23-3                        JUDGE DANIEL E. ORTIZ
                                                              OCTOBER 15, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

(Michael A. Nicholas; Daniel, Medley & Kirby, P.C., on brief), for
appellant.  Appellant submitting on brief.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Dennis Lee Mays appeals his jury convictions of rape, forcible sodomy, and attempted

forcible sodomy.  He argues that the evidence was insufficient to support his convictions because

the victim's testimony was inherently incredible.  We affirm.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

After an argument in January 1999, S.V.'s boyfriend dropped her off about five miles from where they lived together. As S.V. began walking home, a car pulled next to her with two Black males inside. They offered to drive her home, which she accepted. At some point, S.V. sensed danger and asked the men to drop her off at the gas station. They refused and instead turned down a gravel road and stopped in a driveway. There was nobody else in the area.

After exiting the vehicle, the driver pulled S.V. from the car by her hair. The men then ripped her clothes off. The Commonwealth presented some of S.V.'s damaged clothes at trial. S.V. never saw a weapon, but one of the men mentioned having a gun.

The two men took turns raping S.V. One raped her while the other held her down, and then they switched positions. One of the men put his penis in S.V.'s mouth and told her he would kill her if she bit him. He ejaculated in S.V.'s mouth, and the semen got on her face and neck. One of the men tried to put his penis in S.V.'s anus.[1] S.V. did not consent to any of these sexual acts. She did not fight back because she believed they would kill her if she resisted. Eventually, the men drove away, leaving S.V. on the side of the road.

S.V. could not identify Mays as one of the perpetrators. She admitted that she had 23 prior felony convictions, all of which occurred after 1999. She was addicted to crack cocaine at the time of the rape but denied using any drugs on the day she was raped. She also denied that she had traded sex for drugs.

Two vehicles drove by after the men left. Karen Lewis was in the first vehicle and testified that she saw a woman on the side of the road yelling for help. Lewis and her husband drove to a neighbor's house before returning to the scene. When they returned, the woman was gone.

---

[1] It is unclear from S.V.'s testimony whether the same man ejaculated in her mouth and tried to penetrate her anus.

Lane Kemp drove the second vehicle. S.V. ran in front of Kemp's truck, and he had to stop to avoid hitting her. She got in the passenger seat of his car, naked and crying. She told Kemp that she had been raped and needed his help. Kemp gave her some coveralls which she used to clean herself. When she returned the coveralls to Kemp, they were damp and "had a funny smell" that "wasn't urine." Kemp threw them away. Kemp brought S.V. to his wife. S.V. told the Kemps that two Black men had picked her up and raped her after she had fought with her boyfriend. The Kemps persuaded S.V. to call the police.

After a deputy sheriff arrived and swabbed S.V.'s neck, she went to the emergency room and underwent a physical evidence recovery kit examination during which a nurse swabbed her neck again and inside her vagina. The Department of Forensic Science tested the swabs and determined that there was semen in the vaginal cervical swab from one male and semen in the neck swab from a separate male. S.V.'s boyfriend was excluded as a match for either profile. The police uploaded the DNA profiles to a database but did not find a match for many years.

In 2020, the police obtained a "hit" indicating that one of the DNA profiles in the database belonged to Mays. Deputy Sheriff Dusty Sheppard interviewed Mays and obtained a fresh DNA sample from him. Mays denied ever meeting S.V. or having sex—expressly including oral sex—with her or any other white woman. He also denied that he had ever used drugs, sold drugs, or traded drugs for sex.

Mays could not be eliminated as a contributor to either swab sample from S.V.'s neck. The probability that a randomly selected person could not be eliminated as a contributor to one of the samples was 1 in greater than 7.2 billion. The probability that a randomly selected African American could not be eliminated as a contributor to the other neck sample was 1 in 68 million. Mays was eliminated as a contributor to the vaginal cervical sample.

At trial, Mays denied raping or threatening S.V. He testified that he used to exchange drugs for oral sex in the 1990s. He did not remember S.V. but speculated that his semen was on her neck because he had made such a trade with her.

The jury convicted Mays of rape, forcible sodomy, and attempted forcible sodomy. The trial court sentenced Mays to 80 years' imprisonment with 34 years suspended.

ANALYSIS

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question . . . is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Washington v. Commonwealth*, 75 Va. App. 606, 615 (2022) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

Apart from the standard of review, Mays's entire argument states:

> However, in this case, Appellant testified cogently, concisely, and clearly that he engaged in consensual intercourse with (name) [sic].
>
> . . . [S.V.]'s testimony was so contrary to human experience as to be believed, and the Court should have struck the evidence as her testimony was incredible as a matter of law. Particularly when compared to Appellant's testimony, the record is clear that there is no comparison. The Court should not have allowed the jury to consider the competing testimonies. Instead, the Court should have found that there was insufficient evidence to submit the case to the jury, and struck the evidence.

An opening brief must contain "the argument (including principles of law and authorities) relating to each assignment of error." Rule 5A:20(e). "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Id.* at 746 (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). Mays provides no explanation for why, in his view, S.V.'s testimony was inherently incredible as a matter of law. Nor does he provide any legal authority supporting his conclusory assertions on brief. "[I]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him," and we will not do so here. *Id.*

In any event, Mays's summary assertions are meritless. "[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). This Court will not disturb a credibility finding on appeal unless the "testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)).

S.V.'s testimony was not inherently incredible. Moreover, S.V.'s testimony was corroborated by the DNA evidence, which identified Mays as one of the perpetrators, and the testimony of other witnesses who encountered a naked and panicked S.V. that night. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (holding that although corroboration is not necessary, a witness's testimony was not inherently incredible when it was corroborated by other evidence). And the contemporaneous story S.V. told those witnesses mirrored the

testimony she gave 25 years later.  Nothing about her testimony was "so contrary to human experience as to render it unworthy of belief."  *Kelley*, 69 Va. App. at 626.

A rational jury could also disbelieve Mays's testimony.  The Commonwealth "need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant."  *Young v. Commonwealth*, 70 Va. App. 646, 653 (2019) (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)).  "The reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'"  *Rams v. Commonwealth*, 70 Va. App. 12, 28 (2019) (alteration in original) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)).  "[M]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded."  *Ray v. Commonwealth*, 74 Va. App. 291, 308 (2022) (second alteration in original) (quoting *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)).  Moreover, when considering a defendant's testimony, the jury may conclude that he was "lying to conceal his guilt."  *Cornell v. Commonwealth*, 76 Va. App. 17, 30 (2022) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)).  The jury certainly could do so here, given the inconsistency between Mays's testimony and his denials to Sheppard that he had ever traded drugs for sex or had oral sex with any white woman.

Apart from asserting that S.V.'s testimony was incredible, Mays does not challenge the Commonwealth's proof of identity or any other element of the offenses.  Consequently, we affirm his convictions.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*