COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Friedman and Frucci


CHARLES EDWARD CUNNINGHAM, JR.

                                                     MEMORANDUM OPINION[*]

v.      Record No. 0885-24-1                            PER CURIAM
                                                    JANUARY 21, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Robert B. Rigney, Judge

(Cole M. Roberts; Law Office of Eric Korslund, P.L.L.C., on brief),
for appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Linda R. Scott, Senior
Assistant Attorney General, on brief), for appellee.


A jury convicted Charles Edward Cunningham, Jr., of rape, forcible sodomy, abduction with the intent to defile, and two counts of assault and battery. By final order entered April 3, 2023, the Circuit Court of the City of Norfolk sentenced him to a total of 147 years and 24 months of incarceration with 120 years and 24 months suspended. On appeal, Cunningham challenges the sufficiency of the evidence supporting his convictions. After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Several years before 2021, A.L.[2] met Cunningham at a bus stop in Norfolk. A.L., who was homeless at the time, engaged in sexual conduct with Cunningham on several occasions in exchange for money and food. He also offered to help her obtain "housing resources" and bus passes. A.L. subsequently "stopped seeing" Cunningham when she moved to Portsmouth, but they remained "on good terms."

In February 2021, A.L. left Portsmouth because of "housing issues." She contacted Cunningham about renting a room in his residence for her and her fiancé, Charles Sawyer. On the evening of February 8, 2021, Cunningham met A.L. at the bus stop and they walked to his residence "[t]o see the room." After arriving, Cunningham proposed engaging in a "sexual encounter." A.L. "was for it at one point" because she and Cunningham "were good friends." But she "started feeling bad" because she and Sawyer "were planning to have a baby." She decided that she "didn't want to do it," "put [her] clothes back on," and told Cunningham to "never mind."

Cunningham, who was drinking a beer, became aggressive and kept "pushing the issue." He pushed A.L., and she pushed him back. Cunningham then grew more aggressively violent. When A.L. screamed and tried to leave, he slapped her, "pulled [her] to the ground," and threatened to kill her unless she stopped screaming. He also punched her face, stomach, and side.

---

[1] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the [circuit] court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] We use initials, rather than names, to protect the privacy of the victim.

Cunningham then put his hands around her neck, and she was "barely able to breathe." When he removed his hands, he forced her into the bedroom and took her phone. He then forced her to "give him oral sex," telling her: "Don't bite my dick off, or I'll kill you." He also stated: "You're going to make me come [sic] tonight." A.L. did not want to perform oral sex on Cunningham but did so because she did not wish to "get hurt anymore." At one point, Cunningham held a pocketknife, but he later put it down on a chair next to him.

Cunningham also penetrated A.L.'s vagina with his penis. A.L. did not wish to engage in sexual intercourse but Cunningham threatened her. He continued to sexually assault A.L. throughout the night. During "the whole encounter," Cunningham "aggressively slapp[ed] and punch[ed]" her. A.L. tried to "fight back" by slapping and scratching Cunningham but could not "overpower him." When she told him that she "didn't want to do it," he responded with "[a]ggression." He continued telling her: "You ain't going nowhere. You're going to make me come [sic]."

Cunningham allowed her to leave around 8:00 or 9:00 the next morning. She visited her brother at his nearby workplace to obtain a bus pass but did not tell him that she had been raped. She then went to the hospital, where Sexual Assault Nurse Examiner (SANE) Sasha Spicer examined her. Spicer documented and photographed multiple scratches and bruises to A.L.'s hands, fingers, arms, neck, throat, and lip. Spicer did not observe any injuries to A.L.'s genitalia. Spicer explained that it was "possible for someone to be sexually assaulted and have no genital injury."

A.L. also spoke with police detectives at the hospital. She "t[old] them about what had happened in [Cunningham]'s apartment" the previous night but not about her "past" with him. The Commonwealth charged Cunningham with rape, forcible sodomy, abduction with the intent to defile, strangulation, and assault and battery. A.L. testified at trial that she intended to rent a room

in Cunningham's residence for both her and Sawyer. She did not know until she arrived there that it was a one-bedroom apartment. A.L. stated that Sawyer had recently returned to Virginia Beach from New York. A.L. had planned to call an Uber to bring Sawyer to Cunningham's residence after she arrived there. But she and Cunningham "got[] into an argument and a fight," and Cunningham took her phone.

A.L. testified that when Cunningham forced her to perform oral sex, she was on the bed but did not remember exactly how they were positioned. Regarding sexual intercourse, A.L. initially testified that Cunningham penetrated her "female part" with "[h]is male part." The prosecutor then asked: "That is to say, his penis was inside your vagina?" She responded: "That I remember, but I don't fully recall it, but I think it was, yes, sir." She also stated that both the oral sex and vaginal intercourse "happened all night." A.L. did not recall that Cunningham ejaculated.

A.L. confirmed that, other than the SANE nurse and the detectives at the hospital, she did not tell anyone else that she had been sexually assaulted for several months. She explained that she had "dealt with abuse in the past" and had "held a lot of things in from [her] family and friends."

On cross-examination, A.L. acknowledged that she testified at the preliminary hearing that she and Cunningham had only one previous sexual encounter. She explained that she had issues with short-term memory due to health issues caused by pregnancy. A.L. also acknowledged that although she told the detectives at the hospital that she originally planned to have "consensual sex" with Cunningham on the night of February 8, 2021, she did not tell the SANE nurse.

After the Commonwealth rested, Cunningham moved to strike, asserting that A.L.'s credibility "[wa]s nil" because her testimony was "thoroughly inconsistent" and "made very little sense." The circuit court denied the motion. During Cunningham's case, he presented a stipulation to the jury that the swabs of A.L.'s thighs and external genitalia collected during the SANE exam

contained DNA from "a third party, who was not [her] or . . . Cunningham." "No DNA, other than [A.L.'s], was found in any other sample."

Cunningham then rested and renewed his motion to strike. He again characterized A.L.'s testimony as "internally inconsistent and dishonest." Accordingly, he argued, it "ha[d] to be wholly discarded." The Commonwealth responded that A.L.'s credibility was a "proper question for" the jury. The circuit court again denied the motion. The jury convicted Cunningham of rape, forcible sodomy, abduction with the intent to defile, and the charged count of assault and battery. It also convicted him of a second count of assault and battery as a lesser-included offense of strangulation. Cunningham now appeals.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the [circuit] court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (first alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Cunningham contends that A.L.'s testimony was inherently incredible, and therefore insufficient to support his convictions. "[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, this Court must accept 'the [circuit] court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Canada v. Commonwealth*, 75 Va. App. 367, 386 (2022) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "[W]e may only disturb the [circuit] court's credibility determination if the evidence is 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Lopez v. Commonwealth*, 73 Va. App. 70, 84 (2021) (quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable [people] ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable [people] should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

A.L. testified that she and Cunningham previously had consensual sexual contact. When she went to view a room for rent in Cunningham's residence on the night of February 8, 2021, she initially agreed to engage in sexual activity with him. But after she ultimately declined to do so, Cunningham became physically aggressive, took her into the bedroom, and forced her to engage in oral and vaginal sex against her will. After Cunningham eventually allowed her to leave the next morning, she went to the hospital and reported the rape and assault to the SANE nurse and the police.

Nothing about this testimony is "so contrary to human experience as to render it unworthy of belief." *Lopez*, 73 Va. App. at 84 (quoting *Kelley*, 69 Va. App. at 626). As he did in the circuit

court, Cunningham contends that A.L.'s testimony was "replete with contradictions and inconsistencies." Cunningham was entitled to—and did—seek to highlight these alleged contradictions and inconsistencies on cross-examination and in his closing argument to the jury. But the fact that Cunningham attempted to impeach A.L.'s credibility, even if somewhat successful, "does not necessarily render [her] testimony unworthy of belief." *Juniper*, 271 Va. at 415. Rather, "[t]his circumstance is appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Id.*; *see Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022) ("[T]he mere fact that a witness' testimony may have been impeached does not necessarily render the testimony inherently incredible.").

Cunningham also highlights what he claims was A.L.'s "unexplained failure to report the alleged rapes for nearly a month." But A.L. reported the sexual assault to the SANE nurse and law enforcement later that same day. Moreover, A.L. explained to the jury why she did not report sooner to people in her personal life. We therefore reject Cunningham's contention that A.L.'s testimony was incredible as a matter of law.[3] Accordingly, there is no basis to disturb either the jury's credibility determination or its verdict.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*

---

[3] Cunningham also asserts—without attribution to the record—that A.L.'s "attempt to withdraw the warrants that had been secured" establishes the inherent incredibility of her testimony. The record does not reflect that the jury heard any evidence that A.L. attempted to "withdraw" any warrants issued against Cunningham.